349 P.2d 1044

Carlos BEAL, Plaintiff-Appellee,

v.

LAS VEGAS SAVINGS BANK, a Corporation, Defendant-Appellant.

No. 6599.

Supreme Court of New Mexico.

Feb. 29, 1960.

Noble & Noble, Las Vegas, for appellant.

Donald A. Martinez, Las Vegas, for appellee.

COMPTON, Justice.

This is an appeal from a judgment terminating a "contract for the sale and purchase of timber" for failure of the purchaser to remove the timber within a reasonable time. The contract reads:

"This Agreement, made and entered into this 10th day of October, 1927, by and between Benito Mares and Solidea Mares, his wife of Colfax County, New Mexico, parties of the first part, and Coors Lumber Company, party of the second part, Witnesseth:

. "It is hereby agreed by and between the parties hereto as follows, towit: The said first parties do hereby sell to the said second party all timber and timber rights now standing on the property owned by the first parties situated as follows: (The premises described.)

"And the said second party hereby agrees to pay to said first parties for said timber, the sum of Thirteen Hundred Dollars ($1300) to be paid as follows, to-wit: $300.00 cash in hand; $500 not later than four months after starting shipment of cut timber, the same to be cut by the said second party under and by virtue of this Contract; and $500 not later than eifht months after starting shipment of cut timber, cut by said second party under the provisions of this Contract.

"It is further agreed by and between the parties hereto that the said second party be and is hereby allowed to build such roads as are necessary for the cutting and removal of said timber and also for foresy protection against fires; and it is further agreed by and between the parties hereto that the said second party be, and is hereby granted the privilege to erect any and all buildings which said second party shall deem necessary for the cutting and removal of said timber. It is further agreed by and between the parties hereto that any and all buildings so erected by said second party shall be and remain the property of said second party, and the said second party is hereby authorized to remove said buildings at any time within

sixty days after the said second party shall have finished the cutting and removal of timber under the provisions of this Contract.

"It is hereby mutually agreed by and between the parties hereto that any and all timber growing upon the said lands hereinabove described is hereby sold outright to the said second party to have, hold and do with as the said second party may deem fit.

"It is further agreed by and between the parties hereto that the said parties hereby agree to immediately mark the boundaries of the said property hereinabove described, and if in so doing the said boundaries are not properly marked, the said first parties shall be liable for any damages that may accrue by the cutting of timber on account of not having the said boundaries so properly marked.

"This contract shall be executed in duplicate and shall be binding upon and inure to the benefit of the heirs, executors, administrators and assigns of the parties hereto.

"In Witness Whereof, the parties hereto have hereunto set their hands the day and year first above written."

Appellee is successor in interest to the vendors and appellant is successor in interest to the vendee. Appellee charged in his complaint, filed June 4, 1958, that all timber and timber rights conveyed under the contract had ceased to exist; that appellant and its predecessors in interest had cut, logged and removed all timber conveyed thereby and that appellant had again entered upon the premises and engaged in logging and timber operations. Appellee sought a termination of the contract, an accounting and injunctive relief. Answering, appellant asserted it was the owner not only of the timber growing at the time of conveyance, but merchantable timber presently growing; however, on appeal, appellant has limited its right to the removal of merchantable timber growing at the time of the sale.

At a hearing on the merits, the trial court made the following pertinent findings:

"12. That the said contract did not expressly provide a specific term or time within which the Coors Lumber Company was to remove the timber purchased by it, but did provide:

"(a) That the Coors Lumber Company was to pay $300.00 cash upon the execution of the contract, $500.00 not later than four months after starting shipment of cut timber, and $500.00 not later than eight months after starting shipment of cut timber.

"(b) The Coors Lumber Company was granted the right to build roads and erect buildings on the premises and to remove such buildings within sixty days after finishing 'cutting and removal of timber under the provisions of this contract.'

"13. That it was the intention of the parties to said contract, at the time of the execution thereof, that the said Coors Lumber Company should have a reasonable time within which to remove the timber purchased by it under said contract, as evidenced by the provisions of said contract set forth in the previous finding, and the circumstances surrounding its execution.

"14. That the Coors Lumber Company entered on said premises and for a period of approximately five years cut, logged, milled and removed therefrom great quantities of timber, and that, thereafter, the successors in interest, or assignees, of the Coors Lumber Company failed to make any concerted effort to remove timber from said premises until the year 1955 when the defendant bank began to conduct extensive logging operations thereon under the aforesaid agreement with Gilbert Ortega. * * *

"15. That the said premises are located near the village of Guadalupita, Mora County, New Mexico, and are adjacent to the road leading from said village to Black Lake in Taos County, New Mexico, and that the greater portion of said premises are on the side of the mountains and slope down toward said road.

"16. That ten years from and after the execution of said contract was a reasonable time within which the Coors Lumber Company, or its assignees or successors in interest, might have removed such timber as it purchased under said contract.

"17. That it would be unjust to extend the term of said contract to cover the operations conducted thereunder from and after the year 1937, and that such period of time was not within the contemplation or intentions of the parties to the contract at the time of its execution, and that said premises are of practically no value except for the timber growing thereon, and that Benito Mares and Solidea Mares, his wife, as sellors in said contract did not intend to grant, nor did the Coors Lumber Company, as purchasers, intend to take, more than a reasonable time for the removal of the timber sold and purchased under said contract."

■ The findings are strongly challenged but from our review, we reach the conclusion that the findings are amply supported by substantial evidence. There are many considerations which express the intention of the parties. Looking at the contract itself, it is perfectly clear that they contemplated an early entry upon the premises, this to be followed by continuous operations until all the merchantable timber had been removed. There is evidence that the vendee immediately entered upon the tract, set up a sawmill, built houses of various kinds, and

actively harvested great quantities of timber over a period of some five years, after which the sawmill and buildings were removed, all apparently in compliance with the terms of the contract. In the light of the evidence it would appear that the trial court was quite liberal in finding that ten years was a reasonable time for the removal of the timber.

Where a purchaser fails to remove timber within a reasonable time, when no time for removal is specified, though there be no forfeiture provision in the contract, he loses not only the right to enter the premises for the purpose of removal, but also whatever right he may have had in the timber itself. Joyce v. Gibson, 106 W.Va. 221, 145 S.E. 279; McFadden v. Allen-Nelson Mill Co., 150 Wash. 249, 272 P. 714; Eastern Kentucky Mineral & Timber Co. v. Swann-Day Lumber Co., 148 Ky. 82, 146 S.W. 438, 46 L.R.A.,N.S., 672; Crofoot Lumber, Inc. v. Thompson, 163 Cal.App.2d 324, 329 P.2d 302; Dunn v. Forrester, 181 Ark. 696, 27 S.W.2d 1005; Probst v. Young, 187 Ark. 233, 59 S.W.2d 17; Hughes v. Heppner Lumber Co., 205 Or. 11, 283 P.2d 142, 286 P.2d 126.

But appellant contends that the contract conveyed an estate in perpetuity, an interminable and indefeasible estate, one not subject to forfeiture or termination for failure to remove the timber. They base their argument largely on the language in the contract which reads " * * * any and all timber growing upon said lands hereinabove described is hereby sold outright to the said second party to have, hold and do with as the said second party may deem fit." The contention is without merit. While an estate in perpetuity may be created in standing timber, the intent to do so is not found in the language above quoted or in any other evidence before the court, which found that such was not the intention of the parties. See Joyce v. Gibson, supra.

The general rule is stated at 1 Thompson on Real Property (Perm. Ed.) p. 164 thusly:

"Upon a sale of growing trees without fixing any time for their removal, the purchaser has a reasonable time within which to cut and remove them, and he has in the meantime an interest in the land. Where a deed to standing timber specifies no time for its removal, a terminable estate in the timber passes to the grantee, which may end when a reasonable time for the removal of the timber has expired. But some courts lay down the rule that when a deed conveys the fee simple title to the timber described therein, and no time is fixed for the removal of such timber, the grantee is not required to cut and take off the timber within a reasonable time, but may do so at his pleasure. In other words an estate in perpetuity may be created in standing timber if such is the intention of the parties. However, a contract giving the vendee a per-

petual right to enter and remove timber from land is so unreasonable in its nature that no agreement will be construed as conferring this right unless the intention of the parties so to do is plainly manifested."

See Parsons v. Boggie, 139 Or. 469, 11 P.2d 280; Kalnoski v. Carlisle Lumber Co., 17 Wash.2d 662, 137 P.2d 109. Also see Annotations 15 A.L.R. 51; 31 A.L.R. 946; 42 A.L.R. 641; and 71 A.L.R. 144, where the cases are assembled.

The record being free of error, the judgment should be affirmed. It is so ordered.

McGHEE, C. J., MOISE, J., and JOHN R. BRAND, District Judge, concur.

CARMODY, J., concurs in the results.